# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**ENNIS LEE BROWN,**

                          Plaintiff,

v.                                           **Case No. 17-cv-142-pp**

**NICOLE KAMPHUIS, M. HILLE,**
**BRIAN FOSTER, TONIA MOON,**
**S. STABB, CINDI O'DONNELL,**
**BRAD HOMPE, MARC CLEMENTS,**
**JON LITSCHER, AND WILLIAM POLLARD,**

                          Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 2), SCREENING COMPLAINT UNDER 28 U.S.C. §1915A, AND DISMISSING CASE WITHOUT PREJUDICE**

---

      Plaintiff Ennis Lee Brown, a Wisconsin state prisoner who is representing himself, filed a civil rights complaint under 42 U.S.C. §1983, alleging that the defendants violated his rights under federal and state law. Dkt. No. 1. This order resolves the plaintiff's motion for leave to proceed without prepayment of the filing fee (*in forma pauperis*) and screens the plaintiff's complaint.

**I.**    ***IN FORMA PAUPERIS* STATUS**

      The Prison Litigation Reform Act applies to this case because the plaintiff is incarcerated. 28 U.S.C. §1915. The law allows a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without pre-paying the civil

case-filing fee, as long as he meets certain conditions. Id. One of those conditions is a requirement that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On February 2, 2017, the court assessed an initial partial filing fee of $7.36. Dkt. No. 5. The plaintiff paid $8.00 on February 10, 2017. Therefore, the court will grant the plaintiff's motion for leave to proceed without prepayment of the filing fee, and will allow the plaintiff to pay the balance of the $350 filing fee over time from his prisoner account, as described at the end of this order.

## II. SCREENING OF PLAINTIFF'S COMPLAINT

### A. Standard for Screening Complaints

The Prison Litigation Reform Act requires federal courts to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court may dismiss part or all of a case if the claims alleged are "frivolous or malicious," fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915(e)(2)(B).

To state a claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The complaint need not plead specific facts, and need only provide "fair notice of what the . . . claim is and the

grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "Labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not do. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

The factual content of the complaint must allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Indeed, allegations must "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Factual allegations, when accepted as true, must state a claim that is "plausible on its face." Iqbal, 556 U.S. at 678.

Federal courts follow the two-step analysis set forth in Twombly to determine whether a complaint states a claim. Id. at 679. First, the court determines whether the plaintiff's legal conclusions are supported by factual allegations. Id. Legal conclusions not supported by facts "are not entitled to the assumption of truth." Id. Second, the court determines whether the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." Id. The court gives *pro se* allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B.   Facts Alleged in the Complaint

The plaintiff is incarcerated at the Waupun Correctional Institution (Waupun). Dkt. No. 1 at 3. He alleges that Waupun's inmate accounts department illegally took his money, contrary to Wisconsin law, Wisconsin

3

Department of Corrections (DOC) policy, Wisconsin Division of Adult Institutions (DAI) policy, and the plaintiff's judgment of conviction. Id. According to the plaintiff, on October 21, 2013, he was sentenced in his state criminal case, State of Wisconsin v. Brown, Milwaukee County Case Number 2012CF3796. Id. As part of the plaintiff's sentence, the court ordered him to pay court costs, a DNA victim witness surcharge, and fees, under Wis. Stat. §973.05(4)(b). Id. The plaintiff's judgment of conviction states that Brown should "[p]ay applicable costs, surcharges, victim witness surcharge and assessments. To be paid through collection by DOC from 25% of funds under Sec 973.05(4)(b)." See Dkt. No. 1-1 at 1-2.

  1. *Use of Gifted Funds*

The plaintiff alleges that when he arrived at Waupun in January 2014, the accounts department began to take money from all funds, "contrary to the court ordered 25% of *earned funds* order Wis. Stat. §973.05(4)(b)." Dkt. No. 1 at 4 (emphasis added). The plaintiff asked why money that people had given him as a gift was being used for obligations; defendant N. Kamphuis responded that "it must state 25% of earned funds on the J.O.C." Id. The plaintiff asserts that Kamphuis refused to correct the erroneous use of the gifted funds.[1] Id.

---

[1] Wisconsin Statute §973.05(4)(b) provides in relevant part:

> (4) If a defendant fails to pay the fine, surcharge, costs, or fees within the period specified under sub. (1) or (1m), the court may do any of the following:
>
> …

### 2. Denial of Access to Release Account

In 2015 and 2016, the plaintiff attempted to obtain money from his "inmate release account" to pay his court filing fees. Id. Defendant Kamphuis denied the plaintiff's request because he didn't have a court order; the plaintiff alleges that this denial was contrary to DOC policy, which allows inmates to use their release account to pay filing fees. Id. The plaintiff states that his family paid the initial filing fee and, as a result, he was forced to postpone a case in the Seventh Circuit. Id.

In April or May 2015, the plaintiff asked to use his release account to pay the initial filing fee for a civil suit, and he asked again in February 2016. Id. at 7. He also filed a complaint about defendant Kamphuis's denial of access to his release account. Id. The plaintiff indicates that in January 2016, Kamphuis began to remove money from his release account after denying him access to it. Id. He says that she took funds to pay court fees without his consent or a court order, contrary to DOC policy. Id.

### 3. Denial of Legal Loan

The plaintiff recounts that around July 2016, he attempted to obtain a legal loan, and argues that he met the requirements because he had no funds in his regular account. Id. at 5. He says that Kamphuis denied the request, because the plaintiff had spent a "large amount of money on canteen," which

---

(b) Issue an order assigning not more than 25% of the defendant's commissions, earning, salaries, wages, pension benefits, benefits under ch. 102, and other money due or to be due in the future to the clerk of circuit court for payment of the unpaid fine, surcharge, costs, or fees.

the plaintiff denies. Id. The plaintiff says that he filed an inmate complaint about the denial, but that the warden, the investigator, and the assistant to the secretary of the DOC all agreed with Kamphuis and directed the plaintiff to plan his spending to include legal costs. Id.

     *4. Act 355*

The plaintiff asserts that on July 1, 2016, the secretary of the DOC implemented Act 355, which he says amended Wis. Stat. §§301.32(1) and 973.20(11), and allowed the DOC to collect 50% of an inmate's funds for restitution. Id. at 5. The plaintiff alleges that while the amended statute discussed the warden's "authority to collect" court-owed obligations, it failed to address Wis. Stat. §973.05(4)(b). Id. He says that the DOC then began to take 50% of all funds sent to the plaintiff or earned by him; he alleges that this action was contrary to Wis. Stat. §973.05. Id. The plaintiff claims that the implementation of Act 355 violated "ex post facto and due process" in his case. Id. He says that he wrote to the inmate accounts department after the July 1, 2016, 50% deductions, but that Kamphuis either provided false information or did not respond to the plaintiff's requests. Id.

The plaintiff indicates that on October 24, 2016, he again wrote to Kamphuis to get a copy of the payments made on his court-ordered obligations. Id. He explains that defendant M. Hille responded, stating that "he could not give me copies and would print a report." Id. The plaintiff says that he requested the report, but that Hille told him to wait until November 1, 2016,

6

because he didn't want the plaintiff to waste his money. Id. The plaintiff says that he did not obtain the requested records of payments made. Id.

On November 15, 2016, the plaintiff says, he wrote to Hille to address the funds that had been taken contrary to the judgment of conviction for the previous thirty-four months. Id. The plaintiff says that Hille told him that "the DOC always could take 50% and the 25% contrary to the J.O.C." Id. Despite the facts that the plaintiff was sentenced in October 2013, and that the amended Act 355 did not take effect until July 1, 2016, the plaintiff says that Hille stated that the DOC had had the authority to supersede the court's orders for twenty years, and Hille refused to address the thirty-four months of missing and illegally taken funds. Id.

### 5. *Inmate Complaints and Other Correspondence*

The plaintiff recounts that on November 7, 2016, he wrote two inmate complaints about the money that had been taken. Id. He says that the complaint examiner returned both complaints "on false pretense." Id. The plaintiff alleges that the institution complaint examiner, defendant Tonia Moon, has continually returned his complaints for meritless reasons, contrary to DOC policy. Id. at 6. He alleges that Moon used this tactic to expire the fourteen-day time period to file a complaint, and to frustrate or discourage the filing of complaints against staff. Id.

The plaintiff explains that he wrote to defendant Warden Brian Foster about the missing funds four times. Id. The plaintiff says that Foster's secretary, defendant S. Staubb, responded by directing the plaintiff to

7

Kampuis, "the actual one the issue was with." Id. The plaintiff says that while Warden Foster responded in January 2017, Foster failed to address the embezzlement and harassment allegations. Id. The plaintiff alleges that under Wis. Stat. §301.32(1), the warden is responsible for the collection of money to pay the court-ordered obligations, yet Foster failed to collect the right amount to pay the obligation. Id. The plaintiff also alleges that Foster failed to train staff or monitor their behavior to ensure they collected obligations pursuant to state law and DOC policy. Id.

The plaintiff indicates that after exhausting administrative remedies at Waupun, he appealed to Madison about the missing funds. Id. Again, he says, the examiner used §973.20(11) to assess the plaintiff's complaint. Id. He alleges that defendants Cindi O'Donnell and Brad Hompe denied his appeal, and did not examine the "obvious facts." Id. The plaintiff asserts that neither O'Donnell nor Hompe addressed the missing funds from the release account or the money taken for thirty-four months prior to the July 1, 2016 amendment to Act 355. Id.

The plaintiff says that he wrote to the DAI financial manager twice to attempt to correct the error and find the missing funds. Id. at 7. He indicates that defendant Marc Clements, the assistant DAI financial manager, responded, but failed to address the court-ordered judgment of conviction and missing money. Id. Rather, the plaintiff says, Clements simply supplied the plaintiff with a copy of the §973.20(11) amendment and Act 355, to include §301.32(1), which the plaintiff asserts did not apply to his case. Id. The plaintiff

argues that Clements failed to follow policy and investigate, instead relying on Kamphuis's statements. Id.

### 6. Request for Relief

For relief, the plaintiff seeks $25,000 from each defendant, $50,000 for each claim, and $50,000 for each year the defendants allegedly violated the state-imposed rights of due process and Wis. Stat. §973.05(4)(b). Id. at 8. He also seeks $1,250,000 punitive damages and "to correct the misapplication of well-established laws of the U.S. and State of Wisconsin under ex post facto, due process." Id.

C. Discussion

The plaintiff appears to advance several claims. First, he claims that the defendants unlawfully collected his trust account money, contrary to Wisconsin state law and federal law. Second, he claims that the defendants failed to give him a legal loan and to allow him to access his release account, contrary to DOC regulations. Third, he claims that the defendants failed to comply with DOC regulations in the processing of his inmate complaints.

### 1. First Claim: Defendants Allegedly Took Plaintiff's Money Contrary to Wisconsin State Law and Federal Law

The Fourteenth Amendment prohibits the state from depriving an individual of life, liberty, or property without due process of law. U.S. Const. amend. XVI. Courts first determine which interest is at stake, then determine what process is due. Zinermon v. Burch, 494 U.S. 113, 128-32 (1990). Inmates have a property interest in their prison trust account statement. See Campbell v. Miller, 787 F.2d 217, 222 (7th Cir. 1986).

9

A defendant may "cure" a deprivation of property that is "random and unauthorized" with post-deprivation remedies. Id. Conduct is "random and unauthorized" if it is unpredictable. Hamlin v. Vaudenberg, 95 F.3d 580, 584 (7th Cir. 1996). For instance, property confiscated contrary to DOC procedure is "random and unauthorized" because the state cannot predict when or if a deprivation will occur given that there were procedures in place that prison staff were required to follow. See Leavell v. Ill. Dep't of Nat. Res., 600 F.3d 798, 804-05 (7th Cir. 2010). In such situations, a post-deprivation remedy cures the problem (the State could not have cured it pre-deprivation, because it could not have predicted beforehand when a violation would occur). Zinermon, 494 U.S. at 129 ("the State cannot be required constitutionally to do the impossible by providing pre-deprivation process" for a random and unauthorized conduct.).

Wisconsin law has post-deprivation procedures to address random, unauthorized deprivations of property by state officers and officials. See Singh v. Gegare, No. 14-CV-837, 2015 WL 7430027, at *11 (E.D. Wis. Nov. 20, 2015), aff'd, 651 F. App'x 551 (7th Cir. 2016), reh'g denied (June 21, 2016); see also Patrick v. Wisconsin, No. 13-CV-231-WMC, 2014 WL 576153, at *3 (W.D. Wis. Feb. 12, 2014). After an inmate files an offender complaint in the prison, he can appeal an adverse decision to the state corrections complaint examiner, which results in a decision from the secretary of the DOC. Wis. Admin. Code §§ DOC 310.04(3), 310.09. If an inmate disagrees with the secretary's decision, he can appeal to the Wisconsin state circuit court through a writ of *certiorari*. See id.

Wisconsin law also provides tort remedies for those whose property has been converted or damaged by another. Wis. Stat. §§893.35 (action to recover personal property after wrongful taking, conversion, or wrongful detention); 893.51 (action for damages resulting from wrongful taking, conversion, or wrongful detention of personal property); and 893.52 (action for damages from injury to property); see also Hamlin, 95 F.3d at 585 (inmate-complaint review system, *certiorari* review under Wisconsin law, and Wisconsin tort remedies against prison officials are adequate remedies for deprivation of good-time credits); Wolf–Lillie v. Sonquist, 699 F.2d 864, 871 (7th Cir. 1983) (Wisconsin tort remedies are adequate for deprivation of property resulting from sheriff's execution of outdated writ of restitution).

The plaintiff alleges that the defendants collected money from his trust account in violation of Wisconsin state law; he is claiming that the defendants' actions were "random and unauthorized." See Gidarisingh v. Pollard, No. 12-CV-455, 2013 WL 5349114, at *15 (E.D. Wis. Sept. 23, 2013), vacated in part on other grounds, 571 F. App'x 467 (7th Cir. 2014). But as the court has explained, the plaintiff has adequate post-deprivation procedures available to him to address the issue. Because there is "process" available to him, the plaintiff cannot show a deprivation of due process under the Fourteenth Amendment. See Zinermon, 494 U.S. at 126 ("The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process"); see also Morris v. McKeever, 655 F. Supp. 388, 391 (W.D. Va. 1987)("A suit based on a

wrongful act that ignores the existence of a post-deprivation remedy is, in effect, one that considers only partial or unfinished state action.").

The plaintiff also claims that the defendants violated "ex post facto" when they applied Act 355 to him. A law violates the *ex post facto* clause of the United States Constitution only "if it punishes as criminal conduct an act that was innocent when done, or makes more burdensome the punishment for a crime after its commission." O'Grady v. Libertyville, 304 F.3d 719, 723 (7th Cir. 2002); see also Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 504 (1995). The plaintiff doesn't allege that Act 355 increased the amount of "applicable costs, surcharges, victim witness surcharge and assessments" increased, only that it changed the manner of collection. See id. at 506 n.3 (the focus of the *ex post facto* inquiry is whether any change alters the definition of criminal conduct or increases the penalty by which a crime is punishable). Even if the amount of money had increased, it is not clear that such increase would have violated the *ex post facto* clause. See United States v. Newman, 144 F.3d 531, 538-41 (7th Cir. 1998) (a restitution order does not constitute criminal punishment to support an *ex post facto* claim).

Finally, to the extent that the plaintiff alleges that the defendants violated Wisconsin state law, the court lacks subject matter jurisdiction over the claims. See 28 U.S.C. §§1331 (federal question); 1332 (diversity of citizenship). Federal courts may hear only certain kinds of cases. They may hear cases alleging violations of federal statutes or the federal Constitution (called "federal question" cases). They may also hear cases involving a plaintiff

12

who resides in one state and a defendant who resides in another (called "diversity") cases. Federal courts do not have jurisdiction over state law claims unless the case also involves a federal question or diversity. The plaintiff has not alleged either of those things in this case. The court makes no determination on the merits of any state law claim the plaintiff may have.

   *2. Second and Third Claims: Defendants Did Not Follow DOC Regulations with Regard to Giving the Plaintiff a Legal Loan and Processing his Inmate Complaints*

Prison procedures themselves do not create substantive liberty or property interests that are protected by due process, see Shango v. Jurich, 681 F.2d 1091, 1100-01 (7th Cir. 1982), and a violation of state laws or regulations is not a basis for a federal civil rights suit, see Guajardo-Palma v. Martinson, 622 F.3d 801, 806 (7th Cir. 2010); Domka v. Portage Cty., Wis., 523 F.3d 776, 784 (7th Cir. 1984). A state's inmate grievance procedures do not give rise to a liberty interest protected by the due process clause. Owens v. Hinsley, 635 F.3d 950, 953-54 (7th Cir. 2011); Antonelli v. Sheahan, 81 F.3d 1422, 1430,32 (7th Cir. 1996).

The plaintiff's allegations that the defendants denied his requests for a legal loan and to access his release account, contrary to DOC policy, and that they processed his inmate complaints in a manner that violated DOC policy, do not state a claim under federal law.

D. Conclusion

The plaintiff has failed to state a due process claim for which this court can grant relief, and the court lacks subject-matter jurisdiction over his state law claims. Accordingly, the court must dismiss the case.

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee (*in forma pauperis*). Dkt. No. 2.

The court **DISMISSES THIS CASE WITHOUT PREJUDICE** for failure to state a due process claim and for lack of subject matter jurisdiction.

The court **ORDERS** the Secretary of the Wisconsin Department of Corrections or his designee to collect from the plaintiff's prison trust account the $342.00 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The Secretary or his designee shall clearly identify payments by the case name and number.

The court will mail a copy of this order to the warden of the Waupun Correctional Institution.

Dated in Milwaukee, Wisconsin this 26th day of April, 2017.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge