UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ENNIS LEE BROWN,

                Plaintiff,

v.                                                   Case No. 17-cv-142-pp

NICOLE KAMPHUIS, M. HILLE,
BRIAN FOSTER, TONIA MOON,
S. STABB, CINDI O'DONNELL,
BRAD HOMPE, MARC CLEMENTS,
JON LITSCHER, AND WILLIAM J. POLLARD,

                Defendants.

---

**ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION (DKT. NO. 14), CONSTRUING PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT AS A MOTION TO REOPEN AND AMEND, AND GRANTING THAT MOTION (DKT. NO. 15), AND DIRECTING PLAINTIFF TO FILE A SECOND AMENDED COMPLAINT BY MAY 4, 2018**

---

Plaintiff Ennis Lee Brown is a Wisconsin state prisoner representing himself. He filed a civil rights complaint alleging that the defendants violated his rights under federal and state law. Dkt. No. 1. On April 26, 2017, the court screened the complaint under 28 U.S.C. §1915A, and dismissed it without prejudice for failure to state a due process claim and for lack of subject matter jurisdiction. Dkt. No. 12 at 14. The plaintiff has filed a motion for reconsideration, dkt. no. 14, and a motion for leave to amend the complaint, dkt. no. 15.

1

I.  Background Facts

The complaint alleged that the Waupun Correctional Institution's inmate accounts department illegally took the plaintiff's money, contrary to Wisconsin law, Wisconsin Department of Corrections (DOC) policy, Wisconsin Division of Adult Institutions (DAI) policy, and the plaintiff's judgment of conviction. Dkt. No. 1 at 3. According to the plaintiff, the accounts department erroneously took funds that he'd been given as a gift and used them to pay court obligations, and defendant Kamphuis refused to correct the erroneous use of the funds. Id. at 4.

The plaintiff also alleged that in 2015 and 2016, Kamphuis denied the plaintiff's request to obtain money from his inmate release account to use to pay his court filing fees, because the plaintiff didn't have a court order allowing him to use release account funds for that purpose. Id. The plaintiff alleged that "[his] family paid the initial filing fees as a result, and [he] was forced to postpone action in the 7th Circuit Court of Appeals as well." Id. The plaintiff also alleged that in April or May of 2015, and again in February 2016, he asked to use his release account to pay the initial filing fee for a civil suit. Id. at 7. He alleges that in January 2016, Kamphuis began to remove money from his release account to pay court fees, after denying the plaintiff access to it. Id.

The plaintiff alleged that around July 2016, he tried to obtain a legal loan, but that Kamphuis denied his request because he had spent a large amount of money on canteen purchases. Id. at 4.

The plaintiff asserted that on July 1, 2016, the secretary of the DOC implemented Act 355, which the plaintiff claimed amended Wis. Stat. §§301.32(1) and 973.20(11) and allowed the DOC to collect 50% of an inmate's funds for restitution. Id. at 5. The plaintiff alleged that while the amended statute discussed the warden's "authority to collect" court obligations, it failed to address Wis. Stat. §973.05(4)(b). Id. The plaintiff said that the DOC then began to take 50% of all funds sent to him or earned by him; he alleged that this was contrary to Wis. Stat. §973.05. Id. The plaintiff claimed that the implementation of Act 355 violated "ex post facto and due process" in his case. Id. He said that he wrote to the inmate accounts department after the July 1, 2016 50% deductions, but that Kamphuis either provided false information or did not respond to the plaintiff's requests. Id.

The plaintiff alleged that he submitted inmate complaints and other correspondence to the defendants, advising them that his money had been taken contrary to state law. Id. at 5-7.

The court explained in its screening order that it would not allow the plaintiff to proceed on a due process claim that the defendants allegedly took his money contrary to state law.

> The plaintiff alleges that the defendants collected money from his trust account in violation of Wisconsin state law; he is claiming that the defendants' actions were "random and unauthorized." See Gidarisingh v. Pollard, No. 12-CV-455, 2013 WL 5349114, at *15 (E.D. Wis. Sept. 23, 2013), vacated in part on other grounds, 571 F. App'x 467 (7th Cir. 2014). But as the court has explained, the plaintiff has adequate post-deprivation procedures available to him to address the issue. Because there is "process" available to him, the plaintiff cannot show a deprivation of due process under the Fourteenth Amendment. See Zinermon,

3

> 494 U.S. at 126 ("The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process"); see also Morris v. McKeever, 655 F. Supp. 388, 391 (W.D. Va. 1987)("A suit based on a wrongful act that ignores the existence of a post-deprivation remedy is, in effect, one that considers only partial or unfinished state action.").

Dkt. No. 12 at 11-12.

The court also explained that it was not going to allow the plaintiff to proceed on his *ex post facto* claim.

> The plaintiff also claims that the defendants violated "ex post facto" when they applied Act 355 to him. A law violates the *ex post facto* clause of the United States Constitution only "if it punishes as criminal conduct an act that was innocent when done, or makes more burdensome the punishment for a crime after its commission." O'Grady v. Libertyville, 304 F.3d 719, 723 (7th Cir. 2002); see also Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 504 (1995). The plaintiff doesn't allege that Act 355 increased the amount of "applicable costs, surcharges, victim witness surcharge and assessments" increased [sic], only that it changed the manner of collection. See id. at 506 n.3 (the focus of the *ex post facto* inquiry is whether any change alters the definition of criminal conduct or increases the penalty by which a crime is punishable). Even if the amount of money had increased, it is not clear that such increase would have violated the *ex post facto* clause. See United States v. Newman, 144 F.3d 531, 538-41 (7th Cir. 1998) (a restitution order does not constitute criminal punishment to support an *ex post facto* claim).

Id. at 12.

The court determined that it did not have subject matter jurisdiction over the plaintiff's claims that the defendants violated Wisconsin state law. Id. For that reason, it did not rule on the merits of any state law claim the plaintiff might have. Id. at 13.

Finally, the court explained that it was not going to allow the plaintiff to proceed on his second and third claims—that the defendants didn't follow DOC regulations with regard to giving him a legal loan and processing his inmate complaints.

> Prison procedures themselves do not create substantive liberty or property interests that are protected by due process, see Shango v. Jurich, 681 F.2d 1091, 1100-01 (7th Cir. 1982), and a violation of state laws or regulations is not a basis for a federal civil rights suit, see Guajardo-Palma v. Martinson, 622 F.3d 801, 806 (7th Cir. 2010); Domka v. Portage Cty., Wis., 523 F.3d 776, 784 (7th Cir. 1984). A state's inmate grievance procedures do not give rise to a liberty interest protected by the due process clause. Owens v. Hinsley, 635 F.3d 950, 953-54 (7th Cir. 2011); Antonelli v. Sheahan, 81 F.3d 1422, 1430-32 (7th Cir. 1996).
>
> The plaintiff's allegations that the defendants denied his requests for a legal loan and to access his release account, contrary to DOC policy, and that they processed his inmate complaints in a manner that violated DOC policy, do not state a claim under federal law.

Id.

II. Plaintiff's Motion for Reconsideration (Dkt. No. 14)

In his motion for reconsideration, the plaintiff first states that his claims are consistent with "'procedural due process' which is implemented by the State statute 301.32, 973.20, 973.05 and DOC 309.46[.]" Dkt. No. 14 at 1. He asserts that the DOC failed to honor the sentencing court's order to limit deductions from his account to 25%. Id. at 1. The plaintiff goes on to argue that the DOC violated state and federal law by continuing to deduct 50% of his funds, including those funds he received from family and friends. Id. at 2.

Next, the plaintiff states that when the defendants denied him access to his money and to the legal loan program, it denied him access to the courts,

5

because he could not "meet deadlines, pay postage and supply copies to the court." Id. at 3. The plaintiff says that he used the grievance process, but that defendant T. Moon "would continually return his complaints and not address the issues in it." Id.

The plaintiff explains that when the defendants withdrew funds from his release account—after they had denied him the ability to use those funds—"[i]t was retaliatory after he filed the grievances, complaining about the defendant N. Kamphuis." Id. at 4.

Given these explanations and clarifications, the plaintiff asks the court review its decision dismissing his case. Id.

A.     *Standard of Review for Motion for Reconsideration*

There is no motion for reconsideration under the Federal Rules of Civil Procedure. There are, however, Rules 59(e) and 60(b). A person who wants to file a motion under Rule 59(e) must file it within twenty-eight days of entry of the judgment, while a person who wants to file a motion under Rule 60(b) must file it "within a reasonable time--and . . . no more than a year after the entry of the judgment[.]" Fed. R. Civ. P. 59(e), 60(c)(1). Whether a judge analyzes a motion under Rule 59(e) or 60(b) depends on the substance of the motion, not on the timing, or what the moving party calls the motion. Obriecht v. Raemisch, 517 F.3d 489, 493 (7th Cir. 2008) (citing Borrero v. City of Chicago, 456 F.3d 698, 701-02 (7th Cir. 2006)).

Rule 59(e) allows a court to *alter or amend* a judgment when there is newly discovered evidence, or where there has been a manifest error of law or

6

fact. Harrington v. City of Chicago, 433 F.3d 542, 546 (7th Cir. 2006) (citing Bordelon v. Chi. Sch. Reform Bd. of Trs., 233 F.3d 524, 529 (7th Cir. 2000)). The court may *vacate* a judgment under Rule 60(b) for several reasons. including mistake, excusable neglect, newly discovered evidence and fraud. See Fed. R. Civ. P. 60(b). "Rule 60(b) relief is an extraordinary remedy and is granted only in exceptional circumstances." Harrington, 433 F.3d at 546 (quoting Karraker v. Rent-A-Center, Inc., 411 F.3d 831, 837 (7th Cir. 2005)). Rule 59(e), on the other hand, requires only that the movant "clearly establish" one of the aforementioned grounds for relief. Id. (citing Romo v. Gulf Stream Coach, Inc., 250 F.3d 1119, 1122 n.3 (7th Cir. 2001)).

The plaintiff appears to be arguing that the court made errors of law when it analyzed his claims and dismissed his complaint. As the court noted above, Rule 59(e) allows a court to alter or amend its judgment if it has committed a manifest error of law. See Obriecht, 517 F.3d at 494. Accordingly, the court will consider the plaintiff's motion under Rule 59(e).

As indicated, a court may grant a motion to amend a judgment if the judgment reflects a manifest error of the law. Cosgrove v. Bartolotta, 150 F.3d 729, 732 (7th Cir. 1998). A "manifest error" is a "wholesale disregard, misapplication, or failure to recognize controlling precedent." Oto v. Metro. Life Ins. Co., 224 F.3d 601, 606 (7th Cir. 2000) (citation omitted). Generally, a person cannot use a Rule 59(e) motion to introduce new evidence, or to advance arguments he that could or should have presented to the district court before the court issued its judgment. Moro v. Shell Oil Co., 91 F.3d 872, 876

7

(7th Cir. 1996); Rothwell Cotton Co. v. Rosenthal & Co., 827 F.2d 246, 251 (7th Cir. 1987).

B.  *Application of Rule 59(e) Standard to Facts*

The plaintiff's motion for reconsideration does not describe any error of law that the court made in its screening order. With respect to his procedural due process claim, the plaintiff states that his claims "are consistent with procedural due process." Dkt. No. 14 at 1. The plaintiff sued the defendants, however, for allegedly repeatedly withdrawing too much money from his release account in violation of state law, not for violating some process. The court determined that the plaintiff could not proceed on this claim because the defendants' alleged unlawful actions were random and unauthorized (in other words, not in accordance with, or in violation of, some procedure), and because the plaintiff has an adequate state remedy.

With respect to the plaintiff's claim that the defendants violated "ex post facto" when they applied Act 355 to him, the plaintiff's motion doesn't challenge the court's determination that he failed to state a claim on that issue. Finally, the plaintiff doesn't challenge the court's determination that he failed to state a claim based on allegations that the defendants violated DOC regulations when they didn't give him a legal loans, and in the way they processed his inmate complaints.

What the plaintiff *does* do in his motion is describe some other possible causes of action based on the facts he alleged in the complaint. First, he says that when the defendants denied him access to his money and to legal loans,

8

they denied him "access to the courts." Id. at 3. The original complaint did not say that the defendants denied the plaintiff access to the courts. Because the original complaint did not state an access to courts claim, the court did not commit a manifest error of law in dismissing the complaint without addressing such a claim.

Even if the original complaint had mentioned access to courts, the facts in the original complaint do not support such a claim. While the plaintiff says that in 2015 and 2016, he tried to get money from his release account to pay filing fees, he also says that his family paid the initial filing fees. While he says that he was "forced" to postpone a case in the Seventh Circuit Court of Appeals, he does not say that he wasn't able to proceed with that case. Dkt. No. 1 at 4. Later in the complaint, the plaintiff alleges that four times, he asked to use the money in his release account to pay the initial partial filing fee in a case, but he does not explain whether he was unable to file the case. Id. at 7. These allegations do not state an access to the courts claim, because the plaintiff has not alleged that he lost a valid legal claim or defense because of his inability to access his money or to get a legal loan. See Ortiz v. Downey, 561 F.3d 664, 671 (7th Cir. 2009); Marshall v. Knight, 445 F.3d 965, 969 (7th Cir. 2006).

Next, the plaintiff's motion to reconsider says that the defendants withdrew money from his release account after defendant Kamphuis had denied *him* access to that account, and he says that they did this in retaliation for the plaintiff filing grievances about Kamphuis. Dkt. No. 14 at 4. The original

9

complaint did not say anything about retaliation. The original complaint did not state a retaliation claim, so it was not a manifest error of law for the court to dismiss the complaint without addressing a retaliation claim.

And again, even if the original complaint had mentioned retaliation, the facts do not state a claim for retaliation. The complaint said that Kamphuis would not let the plaintiff have access to his release account, and that later, Kamphuis took money out of the release account even though he hadn't let the plaintiff do so. That is not enough to state a retaliation claim. To support a retaliation claim, a plaintiff must show "that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009) (citations omitted). In the motion to reconsider, the plaintiff says that Kamphuis acted in retaliation for the fact that the plaintiff had filed grievances against him, but does not provide information to support that statement. When did the plaintiff file the grievances? When did Kamphuis deny him access to the money in his release account? How did this harm the plaintiff, if Kamphuis later used the money in the account to pay filing fees? The plaintiff has not provided any of this information.

The plaintiff has not shown that the court committed manifest errors of law when it dismissed his complaint. The court will not grant his Rule 59(e) motion to alter or amend the judgment.

III.   Plaintiff's Motion for Leave to File an Amended Complaint (Dkt. No. 15)

On May 9, 2017, the plaintiff filed a motion to for leave to file an amended the complaint, dkt. no. 15, and on May 18, 2017, he filed a proposed amended complaint, dkt. no. 17. In the motion for leave to amend, the plaintiff asked to amend the complaint to correct and explain his claims, as well as to provide vital evidence in support of his claims. Dkt. No. 15 at 1.

The proposed amended complaint reiterates the plaintiff's allegations that the defendants withdrew too much money from his trust account in violation state and federal law. As the court has explained (twice now), these allegations do not state claims for relief under federal law.

The proposed amended complaint, however, adds new allegations in support of a denial of access to the courts claims. Specifically, the plaintiff alleges that in September 2015, he tried to file a petition for a writ of *habeas corpus* in Dodge County Circuit Court. Dkt. No. 17 at 4. He says he did not have the money to get copies and mail to all the parties; he says that the "money taken from [him]" kept him from being able to pay these costs. Id. He says that this resulted in the dismissal of his petition. Id. The plaintiff also alleges that in October 2015, he tried to file a petition for a writ of *habeas corpus* in the Wisconsin Supreme Court. Id. That court dismissed the petition after the plaintiff couldn't pay the fees, supply the court with required copies or pay mailing costs. Id.

The proposed amended complaint also alleges that defendants Kamphuis, Hille, Pollard and Foster retaliated against him after he filed

11

grievances related to Kamphuis's denial of his request to access his release account. Dkt. No. 17 at 4, 7. The plaintiff further alleges that defendant Stabb retaliated against him with a thirty-day loss of phone privileges because the plaintiff tried to contact the warden about the money erroneously taken from his account. Id. at 7-8.

The proposed amended complaint states plausible access to the court and retaliation claims. Liberally construing these claims, as the court must do for a plaintiff representing himself, the court concludes that these claims arise from the same factual background alleged in the original complaint (the alleged unlawful withdrawal of money from the plaintiff's account). Under these circumstances, the court will construe the plaintiff's motion for leave to file an amended complaint as a motion to reopen the case and amend the complaint. The court will grant that motion, and allow the plaintiff to proceed on the above-described access to the courts and retaliation claims. See Childress v. Walker, 787 F.3d 433, 442 (7th Cir. 2015); Foster v. DeLuca, 545 F.3d 582, 584 (7th Cir. 2008).

The proposed amended complaint, however, doesn't identify the individual defendants personally involved in the plaintiff's access to the courts claims. The plaintiff will need to file an amended complaint if he wants to proceed on those claims. The court will allow the plaintiff to file a proposed second amended complaint. He must use the court's complaint form (the court will enclose a blank form with this order). He must write the word "Second Amended" next to the word "Complaint" on the front page, and put the case

12

number of this case—17-cv-142—in the space provided for the case number. He may bring only two claims in this second amended complaint—his access-to-courts claim and his retaliation claim; he *may not* raise any other claims in the second amended complaint.

If the plaintiff files a second amended complaint by the deadline the court sets below, the court will screen it under 28 U.S.C. §1915A.

I. Conclusion

The court **DENIES** the plaintiff's motion for reconsideration. Dkt. No. 14.

The court **CONSTRUES** the plaintiff's motion for leave to file an amended complaint as a motion to reopen the case, and **REOPENS** this case.

The court **GRANTS** the plaintiff's motion for leave to file an amended complaint. Dkt. No. 15.

The court **ORDERS** that the plaintiff shall file a second amended complaint in time for the court to receive it by the end of the day on **May 4, 2018**. The second amended complaint must comply with this order. If the court does not receive a second amended complaint by the end of the day on May 4, 2018, the court may again dismiss the plaintiff's case.

The court will mail the plaintiff a prisoner complaint form along with this order.

Dated in Milwaukee, Wisconsin this 30th day of March, 2018.

BY THE COURT:

HON. PAMELA PEPPER
**United States District Judge**